## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRUCE BUNTING, *et al.*,**<br><br>                Plaintiffs,<br><br>   v.<br><br>**DISTRICT OF COLUMBIA CVS PHARMACY, LLC,**<br><br>              Defendant. | Civil Action No. 22-cv-766 |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Dr. Bruce Bunting and Jessie Brinkley ("Plaintiffs") bring this suit against Defendant District of Columbia CVS Pharmacy, LLC ("CVS") for damages arising out of personal injuries that Dr. Bunting allegedly suffered during an incident at CVS' premises in Northwest, Washington, D.C. (the "CVS Store"). ECF No. 1-1 at 1.

Before the Court is CVS' Motion for Summary Judgment ("Motion"). ECF No. 47. For the following reasons, the Court **GRANTS** CVS' Motion.

## FACTUAL SUMMARY

### Dr. Bunting's Fall

Plaintiffs allege that on December 24, 2020, Dr. Bunting slipped and fell outside the automatic exit doors at the CVS Store. ECF No. 47-2 at 3. Dr. Bunting claims that he slipped on "slick and wet concrete that resulted from a mixture of salt and water." *Id.* In his deposition, Dr. Bunting testified that he was "one-hundred percent certain that he slipped on a mixture of water and salt that was outside the door of the CVS [S]tore." ECF No. 48-3 at 2. Dr. Bunting described the mixture of water and salt as a "granular soup." *Id.* Plaintiffs allege that CVS created the slick surface by "spreading [] the salt on a wet and warm day, which caused it to make the ground unsafe

1

and slippery." ECF No. 1-1 at 4. According to Plaintiffs, the CVS Store was "negligently kept, maintained, and operated, creating an unreasonable risk of injury to invitees" such as Dr. Bunting. *Id.* at 5. As a result of the fall, Dr. Bunting allegedly suffered a "closed fracture dislocation of his right ankle" that required surgery. *Id.* at 4. Plaintiffs further allege that CVS' negligence caused Dr. Bunting to suffer "serious bodily and emotional injuries and damages, including physical pain, suffering, emotional distress, inconvenience, loss of the enjoyment of life, and medical expenses." *Id.* at 5.

## Expert Testimony

One of CVS' designated expert witnesses is Alexandra Maddox, a mechanical and biomedical engineer. ECF No. 33 at 4. In her expert report, Maddox details her investigation, including slip resistance testing she conducted on January 19, 2023 on the incident walkway surface at the CVS Store, and provides her opinions regarding the slip resistance of that surface. ECF No. 33-5. As part of her investigation, Maddox used an English XL Variable Incident Tribometer ("VIT"), a device used for slip resistance testing in different environments. *Id.* at 9, 14. A VIT is designed to yield coefficient of friction ("COF") measurements that correlate to the likelihood of slip incidents occurring on a given surface. *Id.* at 14. Maddox applied American National Standards Institute ("ANSI") standard A1264.2, which recommends a COF of 0.50 or greater for walking surfaces in the workplace under dry or wet conditions. ECF No. 33-5 at 4, 14.

In her report, Maddox concluded that the walkway surface at the CVS Store had a COF of 0.64 when dry and 0.51 when wet. *Id.* at 9. According to Maddox, the salt and water solution on which Dr. Bunting described slipping "is less lubricating than water on a walking surface, and creates greater slip resistance than water alone." *Id.* at 16. Therefore, Maddox concluded, among other things, that the walkway surface "was reasonably safe for pedestrian traffic" and "[t]here is

insufficient evidence to support the claim that the incident walkway caused [Dr. Bunting's] fall." *Id.* Despite this conclusion, Plaintiffs assert that after the close of discovery, CVS produced Maddox's field notes that show that the area "directly outside the exit door where Dr. Bunting slipped and fell had an average [COF] of 0.49 when wet." ECF No. 52 at 1.

One of Plaintiffs' expert witnesses is Dr. Gregory Harrison, a registered professional civil engineer. ECF No. 48-3 at 3. In his deposition, Dr. Harrison testified that "[a] static COF equal to 0.50 or greater is a safe pedestrian walkway surface based on well-established [and] accepted human factors studies and the safety literature at large." ECF No. 48-3 at 4. He also testified that the 0.50 COF standard represents reasonable care and applies to business owners. *Id.* at 4–5. Rather than using a VIT to produce a specific COF value when performing testing, Dr. Harrison asserts that that he can calibrate his own hand to measure slip resistance by running it across a "test tile" that has been previously measured by a James Machine, a non-portable laboratory device used to produce COF values. *Id.* at 5–6.

Dr. Harrison's report details his investigation, including his November 20, 2022 site visit to the CVS Store. ECF No. 47-5 at 5. To conduct his testing on the walkway surface, Dr. Harrison poured water out of a 16.9-ounce bottle onto the walkway surface and used two pairs of shoes— one with a leather sole and one with a rubber sole—to test the slip resistance of the walkway surface. ECF No. 48-3 at 7. Significantly, Dr. Harrison did not use saline or add salt to the water when performing his testing. *Id.* Dr. Harrison concluded, among other things, that Dr. Bunting's fall "simply could not have happened unless the walkway surface was very slippery and far below having a static [COF] equal to or greater than 0.50." ECF No. 47-5 at 9.

Plaintiffs' other expert witness, Lisa Rose, is a certified snow professional who offered opinions as to "whether the snow and ice remediation by [CVS] was consistent with the standard

of care concerning accepted practices in the snow and ice management industry." ECF No. 48-3 at 11. Rose acknowledged in her deposition that CVS contracted with Greenscape Land Design, Inc. to perform snow removal and ice mitigation services on a twenty-four hour, seven-days per week basis. *Id.* According to Rose, it was reasonable for a commercial business such as CVS "to rely on a professional snow and ice management company to perform these services." *Id.* Rose also acknowledged that placing salt or deicer product is an appropriate measure to treat icy walkway surfaces and mitigate the potential for a slip and fall event and "create a safe environment." *Id.*

> In her report, Rose stated that:
>
> [T]he area where this incident occurred was not safe due to the presence of the sidewalk deicing material and resulting slurry and rock salt crystals on a foreseeable and designated ingress/egress. The presence of the slurry and rock salt crystals on this walking surface created an impediment to its safe use.

ECF No. 47-7 at 21. Rose also concluded that the "unnecessary distribution of the sidewalk deicing material was the proximate cause of Dr. Bunting's slip-and-fall incident." *Id.* at 25. In her report, Rose relied on ANSI A1000, *System Requirements for Snow and Ice Management Services*. *Id.* at 11-12, 15–17. In citing this report and its provision concerning the placement of signs next to potentially slippery conditions, Rose unilaterally removed the term "professional snow and ice management companies" and replaced it with "responsible parties." *Id.* at 16. Rose testified that she made this alteration because she believes CVS should be held to the same standard as a professional snow and ice management company. ECF No. 48-3 at 15. Rose acknowledged that she does not know of any specific standard or authority that authorized her to make such a change. *Id.*

## PROCEDURAL HISTORY

Plaintiffs filed a three-count Complaint against CVS on February 14, 2022 in the Superior Court of the District of Columbia.  ECF No. 1 at 1.  Plaintiffs alleged: (1) negligence – premises liability; (2) negligence *per se*; and (3) loss of consortium.  ECF No. 1-1 at 5–9.  Plaintiffs seek: (1) compensatory damages in the amount of $2,000,000; (2) payment of all costs associated with this case; (3) pre- and post-judgment interest; and (4) "such other and further relief as this Court deems proper." *Id.* at 9.  CVS removed the case to this Court on March 21, 2022 based on diversity of citizenship.  ECF No. 1.

## ANALYSIS

### I.  Standard

#### A.  Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Anderson*, 477 U.S. at 247–48.  Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.  The Court's inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

On summary judgment, a reviewing court must take the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See,*

*e.g.*, *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020).  The non-movant, however, "must do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, it must point to specific facts

in the record that reflect a genuine issue warranting trial.  *Id.*  Moreover, the Court must grant

summary judgment if the non-movant "fails to make a showing sufficient to establish the existence

of an element essential to" its case and on which it "will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In that case, summary judgment is warranted because

"a complete failure of proof concerning an essential element of the [non-movant]'s case

necessarily renders all other facts immaterial." *Id.*  The non-movant "need not present evidence

in a form that is currently admissible," but "must produce evidence capable of being converted

into admissible evidence." *Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1315 (D.C. Cir. 2021).

Conclusory assertions offered without any evidentiary support do not establish a genuine issue for

trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B.  Negligence

#### i.  Generally

To defeat a motion for summary judgment in a negligence case applying D.C. law,[1] a

plaintiff must make a showing sufficient to establish the existence of a genuine issue of material

fact on the following essential elements: "(1) the defendant owed a duty of care to the plaintiff, (2)

---

[1]      In a diversity case, this Court must apply D.C. choice of law rules to determine the
substantive law that applies. *Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861, 864 n.16 (D.C.
Cir. 1984) ("In diversity cases, federal courts in the District of Columbia apply the substantive law
of the forum with respect to those issues that are outcome-determinative.").  Under D.C. choice-
of-law rules, the governing substantive law is that of the *lex loci*, or the jurisdiction in which the
alleged tortious acts occurred. *Carr v. Bio-Med. Applications of Washington, Inc.*, 366 A.2d 1089,
1092 n.3 (D.C. 1976).  Here, Dr. Bunting's injury occurred in the District of Columbia, and the
Parties do not dispute that D.C. law governs Plaintiffs' negligence claims. *See, e.g.*, ECF No. 1-1
at 2; ECF No. 47 -2 at 17; ECF No. 48-1 at 5.

the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff."[2] *Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 976 (D.C. 2023); *see also Celotex*, 477 U.S. at 322.  In a premises liability case, the applicable standard for determining whether a property owner has exercised the proper level of care to a person lawfully upon the premises "is reasonable care under all of the circumstances." *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738 (D.C. 1988).  To that end, a property owner is liable for injuries caused by unreasonably dangerous conditions—that is, conditions that involve an unreasonable risk of harm to others—that are "discoverable in the exercise of ordinary care." *Id.* at 742; *see also* Restatement (Second) of Torts § 342 (1965) (noting that the condition must "involve[] an unreasonable risk of harm" for liability to attach).[3]  In that instance, the property owner has "a duty to exercise reasonable care to cure [the] dangerous condition." *Campbell v. Noble*, 962 A.2d 264, 266 (D.C. 2008).  Put another way, the property owner must "exercise reasonable care under the circumstances to protect" a lawful visitor from the dangerous condition.  *Odemns v. District of Columbia*, 930 A.2d 137, 142 n.8 (D.C. 2007).

A property owner does not owe a visitor a duty to warn the visitor about the presence of a particular condition on the premises unless, among other things, the condition at issue is unreasonably dangerous.  *See Reeves v. Washington Metro. Area Transit Auth.*, 135 A.3d 807, 812 (D.C. 2016) (ruling that the issue of whether defendant owed plaintiff a duty to warn in a slip-and-fall case depended on, among other things, whether the wet floor "constitute[d] a dangerous

---

[2]    Plaintiffs do not dispute CVS' assertion that "a claim for loss of consortium . . . is derivative" and that "judgment must be entered" for CVS "on all counts" if Plaintiffs cannot establish liability for negligence or negligence *per se*.  ECF No. 47-2 at 23 n.5.

[3]    This duty does not apply unless the property owner has: (1) actual or constructive notice of the dangerous condition; and (2) the right to exercise control over the dangerous condition. *Campbell*, 962 A.2d at 266.

condition"); *Washington Metro. Area Transit Auth v. Barksdale-Showell*, 965 A.2d 16, 25–26 (D.C. 2009) (stating that the duty to warn requires the existence of a "danger").

### ii. Expert Testimony Requirement

A plaintiff in a negligence case must establish the applicable standard of care through expert testimony if the subject is "so distinctly related to some science, profession[,] or occupation as to be beyond the ken of the average layperson." *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000). The D.C. Court of Appeals has ruled that expert testimony is required in cases involving "issues of safety, security[,] and crime prevention." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014).

Courts applying D.C. law in slip-and-fall cases have required expert testimony at the summary judgment stage to establish the standard of care. *See, e.g.*, *Frazza v. United States*, 529 F. Supp. 2d 61, 70 (D.D.C. 2008) ("While an average person may be familiar with the experience of slipping on a wet surface, determining the coefficient of friction of that surface is certainly outside the realm of common knowledge and everyday experience."); *Hayden v. United States*, 21 F. Supp. 3d 37, 41 (D.D.C. 2014) (ruling that jury would not understand the applicable standard of care without an understanding of flooring material, floor maintenance schedule, and the parties responsible for monitoring the floor conditions); *Haney v. Marriott Int'l, Inc.*, Case No. 05-cv-2501, 2007 WL 2936087, at *4 (D.D.C. Oct. 9, 2007) (ruling that the appropriate COF values of a bathtub surface are beyond a lay person's common knowledge).

The expert testimony requirement does not apply in negligence cases involving a straightforward hazard such that the "negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience." *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 200 (D.C. 1991); *see also Destefano v. Children's Nat'l Med. Ctr.*, 121 A.3d 59, 75

(D.C. 2015) (holding expert testimony not required when alleged hazard was a large, uncovered vent in wall of parking garage and was large enough for a child to fall through); *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 425–26 (D.C. 2000) (holding expert testimony not required when alleged hazard was a six-to-seven inch gap between plywood boards covering a large excavation trench into which a pedestrian could fall); *District of Columbia v. Shannon*, 696 A.2d 1359, 1365–66 (D.C. 1997) (holding expert testimony not required when alleged hazard was a hole in a playground slide where a child's fingers could get caught); *Cosio v. District of Columbia*, 940 A.2d 1009, 1013 (D.C. 2008) (holding expert testimony not required when alleged hazard was an overaccumulation of water in shower area at prison).

When expert testimony is required, it is insufficient for the expert to make only "generalized references" to standards. *District of Columbia. v. Moreno*, 647 A.2d 396, 400 (D.C. 1994). Instead, the expert must proffer "a specific, articulable (and articulated) standard of care . . . by which a trier of fact could measure the conduct of the [defendant] and determine whether that conduct deviated from the standard." *District of Columbia v. Carmichael*, 577 A.2d 312, 315–16 (D.C. 1990). The expert must relate the specific standard(s) "directly to the defendant's conduct." *Phillips v. District of Columbia.*, 714 A.2d 768, 773 (D.C. 1998) (internal citation omitted). Further, "the expert must clearly relate the standard of care to the practices in fact generally followed by other comparable [entities] or to some standard nationally recognized by such [entities]." *Clark v. District of Columbia.*, 708 A.2d 632, 635 (D.C. 1997); *see also Carmichael*, 577 A.2d at 315. It is insufficient, for example, for the expert to simply "explain what he or she would have done under similar circumstances." *Phillips*, 714 A.2d at 773. It is permissible, however, for a non-movant to use a movant's expert witness testimony to establish the standard of care. *Thurman v. District of Columbia.*, 282 A.3d 564, 573 (D.C. 2022).

### C. Negligence *Per Se*

To prevail on a negligence *per se* claim, a plaintiff must demonstrate that: (1) the relevant regulation is "meant to promote safety"; (2) the plaintiff is a "member of the class to be protected by the [regulation]"; (3) the relevant regulation was violated; and (4) the plaintiff's injury "resulted from the type of risk against which the [regulation] was designed to protect." *Lewis v. Washington Metro. Area Transit Auth*., 463 A.2d 666, 674 (D.C. 1983). The expert testimony requirement generally does not apply to a negligence *per se* claim. *See, e.g.*, *McNeil Pharm. v. Hawkins,* 686 A.2d 567, 580–81 (D.C. 1996).

In addition to the four essential elements of a negligence *per se* claim, the plaintiff must establish that the regulation at issue does "not merely repeat the common law duty of reasonable care, but [] set[s] forth specific guidelines to govern behavior." *Id.* at 579 (internal quotation marks omitted); *see also Sibert-Dean v. Washington Metro. Area Transit Auth.*, 721 F.3d 699, 704 (D.C. Cir. 2013) (holding regulation providing that a motor vehicle operator "shall, when operating a vehicle, give full time and attention to the operation of the vehicle" went beyond the common law duty of reasonable care); *c.f. Thoma v. Kettler Bros., Inc.*, 632 A.2d 725, 728 n.8 (D.C. 1993) (ruling that regulation providing that "debris, and other loose materials, shall not be allowed on or under stairways" and "[s]lippery conditions on stairways shall be eliminated as soon as possible" did not substantively differ from the common law duty of due care); *District of Columbia v. Mitchell,* 533 A.2d 629, 639 (D.C. 1987) (holding statute requiring government agency to be "responsible for the safekeeping, care, protection, instruction, and discipline" of incarcerated people implicitly recognized the common law duty of reasonable care and contained no specifics that could give rise to a negligence *per se* claim); *Lewis*, 463 A.2d at 674 (D.C. 1983) (holding

10

that building code provision requiring that neighboring property and structures be "sufficiently supported" was insufficient basis for negligence *per se* claim).

II.    **CVS' Motion**

        **A. Plaintiffs Are Required to Establish the Applicable Standard of Care Through Expert Testimony.**

According to CVS, Plaintiffs are required to establish the applicable standard of care through expert testimony. ECF No. 47-2 at 20. CVS argues that a mixture of salt and water is not the sort of "straightforward hazard" that would obviate the need for expert testimony. *See* ECF No. 50 at 6–7. CVS cites to multiple slip-and-fall cases in which courts have required expert testimony to establish the standard of care for surface slip resistance, and notes that the expert testimony requirement can apply to cases "that 'at first blush, appear to be within the realm of common knowledge.'" ECF No. 47-2 at 19 (quoting *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007)); *see* ECF No. 50 at 6.

In response, Plaintiffs argue that this case does not require expert testimony because it involves a "straightforward hazard." ECF No. 48-1 at 8. They rely on *Boff v. Inter-Continental Hotels Corp.*, in which a woman sued a hotel for negligence after she slipped and fell when water allegedly flowed from the hotel's awning onto a downward-sloping granite ramp in the sidewalk. Case No. 17-cv-1523, 2018 WL 6329451, at *1 (D.D.C. Dec. 4, 2018). Plaintiffs point out that the court in *Boff* ruled that expert testimony was not required in part because "[m]ost, if not all, jurors will have experienced the danger of a surprisingly slippery floor." *Boff*, 2018 WL 6329451, at *3; ECF No. 48-1 at 8. Plaintiffs argue that, because Dr. Bunting also "claim[s] [that] he fell on the slippery floor covered in water outside the CVS," a reasonable jury could find that the surface walkway in this case was an "obvious hazard." *Id.* at 8–9. Plaintiffs also rely upon D.C. Court of Appeals cases in which the court ruled that the hazard at issue was obvious and, therefore,

did not require expert testimony. *Id.* at 9–10 (citing *Destefano*, 121 A.3d at 75; *Bostic*, 748 A.2d at 425–26; *Shannon*, 696 A.2d at 1365–66; *Jimenez v. Hawk*, 683 A.2d 457, 462–63 (D.C. 1996)).

In this case, Plaintiffs are required to establish the applicable standard of care through expert testimony.  As the case law makes clear, evaluating the slip resistance of a walkway surface containing a mixture of salt and water is "beyond the ken of the average layperson."  *Arnold & Porter*, 756 A.2d at 433.  Courts applying D.C. law in slip-and-fall cases generally rule at the summary judgment stage that expert testimony is required.  *See, e.g.*, *Frazza*, 529 F. Supp. 2d at 70; *Hayden*, 21 F. Supp. 3d at 41; *Haney*, 2007 WL 2936087, at *4; *but see Boff*, 2018 WL 6329451, at *3–4.  The need for expert testimony is even more clear here than in *Frazza*, *Hayden*, and *Haney* because the plaintiffs in those cases alleged that they slipped on a solely wet surface. 529 F. Supp. 2d at 72; 21 F. Supp. 3d at 39; 2007 WL 2936087, at *1.  In contrast, Dr. Bunting alleges he slipped on a mixture of water and salt, the latter of which Plaintiffs' own expert, Rose, admits is "an appropriate measure to treat icy walkway surfaces" to "mitigate the potential for a slip and fall event."  ECF No. 48-3 at 2, 11.

Plaintiffs' reliance on *Boff* is misguided.  2018 WL 6329451.  The court in *Boff* ruled that expert testimony was not required because: (1) the plaintiff's claim was "rooted in a specific code violation"; and (2) "a reasonable jury could find that the accumulation of excess water on a downward-sloping granite ramp without warnings presented an 'obvious hazard' that falls within the ken of the average lay juror."  *Id.* at **3, 4.  This is not the case here.  *First*, the expert testimony requirement generally does not apply in a case such as *Boff*, where the only claim at issue was negligence *per se*.  *McNeil*, 686 A.2d at 580–81.  Here, Plaintiffs allege both negligence and negligence *per se*.  ECF No. 1-1 at 5–8.  *Second*, the alleged hazard in this case is not overflow water that spilled onto a walkway, but rather water mixed with salt on a walkway.  ECF No. 48-3

at 2.  As noted above, Plaintiffs' own expert admits that salt is "an appropriate measure to treat icy walkway surfaces" to "mitigate the potential for a slip and fall event."  *Id.* at 11.  Although the question of whether excess water on a walkway surface is unreasonably dangerous may be "within the realm of common knowledge and everyday experience" of a juror, the same cannot be said when a juror would be asked to assess whether the presence of a mixture of water and salt on a walkway surface is unreasonably dangerous.  *Beard*, 587 A.2d at 200.

The other cases Plaintiffs cite to support their "straightforward hazard" argument are also distinguishable.  For example, *Destefano* involved a large, uncovered vent in the wall of a parking garage large enough through which a child could fall.  121 A.3d 59 at 75.  Similarly, the hazard at issue in *Bostic* was a six-to-seven-inch gap between plywood boards covering a large excavation trench into which a pedestrian could fall.  748 A.2d at 425–26.  Given that both hazards involved such large and obvious gaps in the wall or floor of a public space through which a pedestrian could have fallen, they are far more likely to be within the ken of the average juror.  *Id.*; *DeStefano*, 121 A.3d 59 at 75.  This is not the case when the question is whether a "granular soup" consisting of water and salt on the ground falls outside the standard of care.  ECF No. 48-3 at 2.  Accordingly, the Court holds that Plaintiffs must establish the applicable standard of care through expert testimony.

### B. Plaintiffs Fail to Raise a Genuine Issue of Material Fact That CVS Breached an Applicable Standard of Care.

Given that expert testimony is required in this case, Plaintiffs must establish—either through the testimony of their experts or CVS' experts—the standard of care that CVS owed to Dr. Bunting at the time of his injury.  *Thurman*, 282 A.3d at 573 (holding that plaintiff can rely exclusively on defendant's expert witness to establish standard of care).  Plaintiffs must then raise

a genuine issue of material fact that CVS breached that standard of care.  *See Freyberg*, 304 A.3d at 976; *Celotex*, 477 U.S. at 322.  Plaintiffs fail to make that showing.

> **i.  Plaintiffs Fail to Make a Sufficient Showing to Create a Genuine Issue of Material Fact That CVS Breached the 0.50 COF Standard of Care.**

CVS contends that Plaintiffs have not established that CVS breached the applicable standard of care at the time of Dr. Bunting's injury.  *See* ECF No. 47-2 at 19–23.  According to CVS, "Plaintiffs' claims must fail when they do not present evidence of the surface's COF despite acknowledging that a COF at or above 0.50 is the applicable standard of care." *Id.* at 21.  "Without evidence of the [COF]," according to CVS, "it is impossible for the jury to determine whether Defendant breached the 0.50 [COF] standard." *Id.*

CVS relies heavily on *Frazza*, asserting that the case is "directly on point" because the plaintiffs' expert testified that the COF only fell below 0.50 when the surface was icy and the plaintiff alleged that the surface was wet, not icy, when he fell.  *Id.* (citing 529 F. Supp. 2d at 72).  Applying *Frazza* to this case, CVS states that Dr. Harrison "did not make any assessment of the slip-resistance of the surface when salt was present" and, as a result, "Plaintiffs cannot establish that at the time [] Dr. Bunting fell on the 'granular soup' with a 'lot of salt', the walkway surface fell below a [COF] of 0.50." *Id.* at 23.  CVS, thus, concludes that Plaintiffs cannot prove that CVS breached the applicable standard of care "because the record is devoid of any evidence as to whether the walkway met the generally accepted standard for slip resistance under the conditions present at the time of the fall." *Id.* at 23.[4]

---

[4]    CVS also argues that the Court should grant its Motion because: (1) Plaintiffs cannot establish that CVS knew or should have known of the allegedly dangerous condition; and (2) Plaintiffs fail to produce admissible expert testimony under Federal Rule of Evidence 702 and *Daubert*. *Id.* at 23–43.  The Court does not reach either issue because even accepting the admissibility of Dr. Harrison's testimony—and as explained below—Plaintiffs have not established a triable issue with respect to breach of an applicable standard of care.

Plaintiffs argue that CVS breached its duty to Dr. Bunting by "creating an unreasonably unsafe, dangerous, and hazardous condition on December 24, 2020 when it mixed salt with the water on the ground at the exit doors even though it was a warm day, which resulted in the creation of a slippery substance on the pavement." ECF No. 48-1 at 10. In response to CVS' argument that Dr. Harrison's testing fails to establish a breach of the 0.50 COF standard of care, Plaintiffs assert that "[t]here is no requirement that a Plaintiff needs to show a machine tested [COF] for the surface on which they fell in order to succeed in a negligence claim." *Id.* at 11. In their Supplemental Opposition, Plaintiffs also claim that they "could arguably show that the surface outside the CVS was unreasonably slippery through Ms. Maddox" because Maddox's field notes indicate that the walkway surface had a COF of 0.49 when wet. ECF No. 52 at 1–2.[5]

Even assuming Maddox properly articulated the standard of care—that a walkway must have a COF of 0.50 or greater, as recommended in ANSI A1264.2—Plaintiffs fail to produce sufficient evidence to create a genuine issue of material fact that CVS breached this standard at the time of Dr. Bunting's injury. It is undisputed that "Dr. Bunting is one-hundred percent certain that he slipped on a mixture of water and salt that was outside the door of the CVS [S]tore." ECF No. 48-3 at 2. Accordingly, Plaintiffs are required to make a showing sufficient to raise a triable

---

[5]     Plaintiffs also argue that CVS was negligent because it: (1) "fail[ed] to take reasonable steps to ensure the safety, cleanliness, and freedom from dampness of areas used by shoppers, including [Dr. Bunting]"; and (2) "still placed salt outside the [exit] door" despite "having evidence and forecast of a substantial warm period," and "ignored the foreseeable risks and hazards resulting from the salt mixing with the water on the ground (i.e., that the floor would become slippery)." ECF 48-1 at 10. Plaintiffs, however, do not elaborate on these two arguments any further or explain why they are distinct theories of negligence from Plaintiffs' claim that CVS created an unreasonably dangerous condition by "mix[ing] salt with the water on the ground . . . which resulted in the creation of a slippery substance on the pavement." *Id.* As a result, these two arguments are subsumed by Plaintiffs' argument that CVS breached its duty by mixing salt with water on the walkway surface, thereby creating a slippery substance that constituted an unreasonably dangerous condition.

issue that the COF of the walkway surface fell below 0.50 when a mixture of water and salt was present on the walkway surface. *See Celotex*, 477 U.S. at 322 (holding that court must grant motion for summary judgment if non-movant "fails to make a showing sufficient to establish the existence of an element essential to" its claim).

Critically, no expert in this case performed any testing of the walkway surface with a mixture of water and salt. *See* ECF No. 48-3 at 7. Even accepting Plaintiffs' assertion that a plaintiff in a slip-and-fall case can establish breach without using a machine to test the COF of the walkway surface, Plaintiffs' experts did not perform *any* testing of the walkway surface under the conditions that Dr. Bunting is "one-hundred percent certain" were present at the time of his injury. ECF No. 48-1 at 11; ECF No. 48-3 at 7 (conceding that Dr. Harrison "did not use saline or add any salt to the water when performing his test"); ECF No. 48-3 at 2. This means that Plaintiffs have not produced any evidence to show through the required expert testimony that CVS breached the applicable standard of care at the time of Dr. Bunting's fall.

Plaintiffs claim that CVS' late-produced notes from Maddox's field test indicate that the COF of the walkway surface was 0.49 when wet. ECF No. 52 at 1. Even when viewing the evidence in the light most favorable to Plaintiffs, their own expert, Rose, admitted that salt is applied to walkway surfaces to *mitigate* the potential for a slip and fall and to "create a safe environment." ECF No. 48-3 at 11. Indeed, Plaintiffs do not claim that a walkway surface with a COF of 0.49 when wet would or could remain below the 0.50 COF threshold after salt is added. Ultimately, without any testing of the walkway surface under the conditions that Dr. Bunting testified were present at the time of his injury, a jury would be called to speculate in order to find that CVS breached the 0.50 COF standard of care at the time of Dr. Bunting's injury. *See Harris*

*v. Safeway Stores, Inc.*, 329 A.2d 436, 437 (D.C. 1974) ("Speculation is not the province of a jury.").

The court's ruling in *Frazza* is directly on point. As CVS notes, in *Frazza*, "this Court granted summary judgment when the condition that Plaintiff claimed caused his fall was not the same condition that his expert identified as unreasonably dangerous when utilizing the generally accepted COF of 0.5 standard." ECF No. 47-2 at 20 (citing *Frazza*, 529 F. Supp. 2d at 61). The plaintiffs in *Frazza* alleged that Mr. Frazza fell on a wet, not icy, floor. *Frazza*, 529 F. Supp. 2d at 64. The plaintiffs' expert witness tested the slip resistance of the floor on which Mr. Frazza fell and concluded that the COF remained above 0.50 when wet and only fell below 0.50 when icy. *Id.* at 65–66. Given that the expert's testing produced COF values below 0.50 only when the floor was icy and Mr. Frazza did not allege that the floor was icy when he fell, the court ruled that the expert's testimony was "insufficient to establish a breach of a relevant standard of care."[6] *Id.* at 70. That is the exactly the case here. As stated above, on this record, Plaintiffs cannot create a genuine issue of material fact that CVS breached the 0.50 COF standard of care because the evidence only supports a finding that the COF of the walkway surface fell below 0.50 when wet, not when it was covered by a mixture of water and salt as Dr. Bunting alleges. ECF No. 48-3 at 2; ECF No. 33-5 at 9–10.

Plaintiffs' argument that it was appropriate for Dr. Harrison to use only water to test the slip resistance of the walkway surface is not persuasive. Plaintiffs' sole authority for this argument is a case in which the court ruled that when "the surface contaminant . . . *remains unknown*, experts use a standardized contaminant – water – to measure a floor's relative slip resistance." ECF No.

---

[6]    The Court also ruled that the plaintiffs could not "demonstrate that Mr. Frazza's fall was caused by" any breach that occurred when the floor was icy and not just wet. *Id.* at 72.

48-1 at 17 (emphasis added) (quoting *Milana v. MSC Cruises, S.A.*, 2022 U.S. Dist. LEXIS 184258, at \*14 (S.D. Fla. Aug. 5, 2022)).  In this case, however, Dr. Bunting testified he was "one-hundred percent certain that he slipped on a mixture of water and salt."  ECF No. 48-3 at 2.  Indeed, Plaintiffs do not identify any slip-and-fall case in which a court denied summary judgment when the record is devoid of any testing of the walkway surface under the conditions that the plaintiff alleges were present at the time of the injury.

In sum, Plaintiffs fail to "make a showing sufficient to establish the existence of an element essential" to their case and "on which [they] will bear the burden of proof at trial."  *See Celotex*, 477 U.S. at 322.

### ii. Plaintiffs Fail to Make a Sufficient Showing to Establish a Breach of Any Other Applicable Standard of Care.

Plaintiffs assert that, through their experts Rose and Dr. Harrison, Plaintiffs established that CVS breached other applicable standards of care.  Indeed, there are a number of additional standards upon which Plaintiffs rely to show CVS' purported breach of the standard of care.  With respect to Rose, for example, Plaintiffs claim that she provided "eight violations of industry standards and generally accepted practices."  ECF No. 48-1 at 29.  Among others, these standards include ANSI/ASCA A1000-2014, *System Requirements for Snow and Ice Management Services*; ASTM F1637-13, *Standard Practice for Safe Walking Surfaces*; the International Property Maintenance Code; and the International Fire Code.  ECF No. 47-7 at 17, 19–20.  As explained below, however, none of these arguments survive summary judgment because the jury would be called to speculate as to each of the purported standards, namely because there was no evidence to support a finding that the walkway surface was unreasonably slippery at the time of Dr. Bunting's injury.  *See Harris*, 329 A.2d at 437 ("Speculation is not the province of a jury.").

Even assuming that Rose properly established that certain provisions from ASTM F1637-13, the International Property Maintenance Code, and the International Fire Code are applicable standards of care because they are recognized nationally, Plaintiffs fail to identify evidence sufficient to create a genuine issue of material fact that CVS breached any of these standards.  ECF No. 47-7 at 19, 20.  The cited provision of ASTM F1637-13, for example, requires: (1) walkway surfaces to be "slip resistant under expected environmental conditions and use"; and (2) painted walkways to "contain . . . appropriate means to render the surface slip-resistant."  ECF No. 47-7 at 19.  As with the 0.50 COF standard, Plaintiffs cannot establish that, at the time of Dr. Bunting's injury, CVS breached a standard requiring the walkway surface to be "slip resistant" without any evidence of the walkway surface's slip resistance under the conditions Dr. Bunting claims were present at the time of his injury.  Again, reaching such a conclusion would require the jury to speculate.

For the same reasons, Plaintiffs have not raised a genuine issue of material fact that CVS breached the relevant provisions in the International Property Maintenance Code and the International Fire Code.  The provisions Rose cited provide that: (1) all walkways must be "maintained free from hazardous conditions"; (2) "[a] safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the public way"; and (3) "[r]equired exit accesses, exits or exit discharges shall be continuously maintained free from obstructions or impediments to full instant use in the case of fire or other emergency."  ECF No. 47-7 at 20–21.  Without any evidence of the condition of the walkway surface when it was covered by a mixture of water and salt, the jury would have no factual basis to determine that CVS breached these standards at the time of Dr. Bunting's injury.

To be sure, Rose cited various other standards in her expert report.  *See* ECF No. 47-7 at 11–25.  She failed, however, to establish any as an applicable standard of care because she did not assert that they are nationally recognized by property owners or that property owners interpret them to require the removal of a water and salt mixture from a walkway surface.  *Clark*, 708 A.2d at 635.  For example, Rose refers several times to ANSI/ASCA A1000-2014, *System Requirements for Snow and Ice Management Services*, in offering her opinion that CVS violated the applicable standard of care, including with respect to the "signage" needed to warn individuals about certain slippery conditions.  ECF No. 47-7 at 14.  Plaintiffs, however, admit that this portion of the standard applies to "*professional snow and ice management companies*" and that Rose decided to remove this term and unilaterally change the term to "responsible parties" in her report.  ECF No. 48-3 at 15.  Plaintiffs concede that Rose "testified that she changed the language of the standard because she believes CVS should be held to the same standard as a professional snow and ice management company" despite her admission that she "does not know of any specific standard or authority that authorizes her to make such a change."  *Id.*  As such, Rose failed to "clearly relate the standard of care to the practices in fact generally followed by other comparable [entities] or to some standard nationally recognized by such [entities]."  *Clark*, 708 A.2d at 635; *see also Carmichael*, 577 A.2d at 315.

Plaintiffs also note that Dr. Harrison referred to various other standards in his expert report.  *See* ECF No. 48-1 at 22–23.  These include, for example, the "Life Safety Code"; "D.C. Uniform building code"; the "IBC model building code"; ASTM F-1637; the "BOCA Building Code(s)"; the "DOJ ADAAG standards governing requirements for slip resistant walkway"; "OSHA employer/employee requirements for a 'safe workplace'"; and the "Encyclopedia of Architecture." ECF No. 47-5 at 6–8, 10.  Similarly, he refers to "prevailing practices expressed in safety manuals

for facilities such as McDonald's, Mission BBQ, Olive Garden, Wendy's, and big box stores like K-Mart, Shoppers World, Safeway, and other chain storefronts" and asserts that they "address the policy procedures for store managers to control and mitigate slippery walkway surfaces." *Id.* at 7.

None of Dr. Harrison's attempts establish an applicable standard of care because he made only generalized references without identifying any specific provisions that might apply in this case. Without more, "generalized references" to standards are insufficient to establish a specific standard of care applicable to CVS. *Moreno*, 647 A.2d at 400 (ruling that expert's references to American Correctional Association standards were insufficient to establish standard of care when expert failed to elicit what those standards said). Further, in making only generalized references to standards, Dr. Harrison failed to proffer "a specific, articulable (and articulated) standard of care" and relate that standard "directly to the defendant's conduct." *Carmichael,* 577 A.2d at 315–16 (holding expert did not establish standard of care when he made "a number of generalized references to ACA standards and District of Columbia regulations" because he did not "single out any particular provisions"). Accordingly, the Court holds that Dr. Harrison failed to establish an applicable standard of care.

### iii. Plaintiffs Fail to Create a Genuine Issue of Material Fact that CVS Owed Dr. Bunting a Duty to Warn Him About the Condition of the Walkway Surface.

In addition to claiming that CVS was negligent in creating an unreasonably dangerous condition, Plaintiffs also argue that CVS was negligent in "failing to put up signs, barriers, and/or tape to warn and alert [Dr. Bunting] or any other person that the exit floor was wet, and failed to take any measures to restrict [Dr. Bunting] from using the area when the floor was wet." ECF No. 48-1 at 10. In support of this argument, Plaintiffs rely on Rose's testimony that "ANSI/ASCA A1000-2014 and A1264.2 set the standard of care for placement of signs to warn the general public

of potential slippery conditions, and that CVS failed to comply in this instance." *Id.* at 29 (internal quotation marks omitted).

Plaintiffs cannot establish that CVS owed Dr. Bunting a duty to warn him of the condition of the walkway surface, however, because, as discussed above, Plaintiffs fail to establish or even raise a triable issue on the existence of an unreasonably dangerous condition at the time of his injury. A property owner only owes a duty to warn a visitor about the presence of a particular condition on its premises if, among other things, the plaintiff can establish that that the condition at issue was unreasonably dangerous. *Reeves*, 135 A.3d at 812; *see also Barksdale-Showell*, 965 A.2d at 25–26. Accordingly, Plaintiffs cannot create a triable issue under a duty-to-warn theory because they have failed to make a showing sufficient to support a jury finding that CVS created an unreasonably dangerous condition by mixing water with salt on the walkway surface at the time of Dr. Bunting's injury.

For the foregoing reasons, CVS is entitled to judgment as a matter of law on Count I of Plaintiffs' Complaint.

### C.  Plaintiffs' Negligence *Per Se* Claim Fails.

CVS argues that both provisions of the D.C. Municipal Regulations ("DCMR") upon which Plaintiffs rely for their negligence *per se* claim—24 DCMR section 2000.5 and 12 DCMR section PM-305G.4[7]—do not impose a "*specific* safety obligation that can be said to have been

---

[7]     In their Complaint and Opposition, Plaintiffs refer to this regulation as DCMR Tit. 12G § 305G.1. ECF No. 1-1 at 7; ECF No. 48-1 at 12 ("Plaintiff is alleging that [CVS]' failure to dry the wet floor, to place a mat over the wet floor, or to warn customers about the wet floor, violated specific D.C. code provisions, specifically . . . D.C. Mun. Regs. Tit. 12G § 305G.1 (2020), which provides that, '[e]very . . . walking surface shall be maintained in sound condition and good repair, and maintained free from hazardous conditions.'"). Based on the regulatory text from which Plaintiffs quote, the Court assumes that Plaintiffs are referring to 12 DCMR § PM-305G.4.

violated" and, therefore, do not differ from the common law duty of reasonable care.[8]  ECF No. 47-2 at 18.  According to CVS, Plaintiffs' negligence *per se* claim is subsumed by their negligence claim.  *Id.* at 19 ("Thus, under either a negligence of [sic] negligence *per se* claim, Plaintiffs must establish what constitutes reasonable care under the circumstances of this case, that reasonable care was not exercised by [] CVS, and that CVS's failure to exercise reasonable care caused injury to Plaintiffs.").

Plaintiffs argue that 24 DCMR section 2000.5 and 12 DCMR section PM-305G.4 are proper bases for a negligence *per se* claim.  With respect to section 2000.5, Plaintiffs argue that the provision differs from the common law duty of reasonable care because the regulation requires an entity such as CVS to "guard or protect" any slippery substance and, therefore, defines specific actions that CVS must take.  ECF No. 48-1 at 14.  Further, according to Plaintiffs, "[o]ne can imagine a circumstance where allowing a slippery substance to remain in a public space would be reasonable under common law negligence analysis, such as if the area had little or no pedestrian traffic, or if the substance was very visible itself, such as a glowing or colorful spill."  *Id.* at 15.  In support of this argument, Plaintiffs rely on *Sibert-Dean*, in which the court "reasoned that the regulation at issue required drivers not only to give 'reasonable' or 'due' time and attention, but to give their 'full' time and attention, which did more than just reiterate common law standards."  *Id.* at 14 (citing *Sibert-Dean*, 721 F.3d at 704).

---

[8]     24 DCMR § 2000.5 provides that "[n]o person shall occupy with, place, or leave, or cause to be placed or left on public space, any wet paint or other slippery or sticky substance, or any deposit dangerous to life and limb, without protecting and guarding that public space."  24 DCMR § 2000.5.  12 DCMR § PM-305.4G provides that "[e]very stair, ramp, landing, balcony, porch, deck or other walking surface shall be maintained in sound condition and good repair, and maintained free from hazardous conditions."  12 DCMR § PM-305.4G.

With respect to section PM-305G.4, Plaintiffs concede that "this provision toes closer to the line set out by *Sibert-Dean*." *Id.* at 15.  According to Plaintiffs, however, the regulation "still removes from consideration the reasonableness question" such that "if you fail to maintain walking surfaces free of a hazardous condition, you are negligent *per se*." *Id.*

Here, Plaintiffs' negligence *per se* claim fails because neither 24 DCMR § 2000.5 nor 12 DCMR § PM-305G.4 is sufficiently distinct from the common law duty of reasonable care.  The D.C. Court of Appeals' ruling in *Thoma* is instructive.  632 A.2d 725.  In that case, the plaintiffs sued a construction company after one of the plaintiffs slipped and fell when visiting a home that was under construction.  *Id.* at 726.  The court ruled that a regulation providing that "debris, and other loose materials, shall not be allowed on or under stairways" and that "[s]lippery conditions on stairways shall be eliminated as soon as possible" was not distinct from the common law duty of reasonable care.  *Id.* at 727, 731.  The court ruled that under the common law duty of reasonable care, the defendant "owed [the plaintiff] a duty to keep the stairways reasonably free of debris and slippery conditions." *Id.* at 731.  As a result, the court concluded that the regulation "add[ed] nothing to what rational jurors—applying common sense and their own experience—would have found to be the care due an invitee under the circumstances." *Id.*

In light of the court's ruling in *Thoma*, it is clear that section 2000.5 does not substantively differ from the common law duty of reasonable care that applies to a property owner.  Just as the regulation at issue in *Thoma* provided that "[s]lippery conditions on stairways shall be eliminated as soon as possible," here Section 2000.5 provides that "[n]o person shall . . . leave, or cause to be placed or left on public space, any . . . slippery [] substance . . . without protecting and guarding that public space." 632 A.2d at 727; 24 DCMR § 2000.5.  In fact, section 2000.5 is even closer to the reasonable care standard than the regulation in *Thoma*.  Section 2000.5 provides that a slippery

substance may remain in a public space so long as the person "protect[s] and guard[s] that public space," which does not substantively differ from a property owner's common law duty to "exercise reasonable care under the circumstances to *protect*" a lawful visitor from a dangerous condition. 24 DCMR § 2000.5; *Odemns*, 930 A.2d at 142 n.8 (emphasis added).  The regulation in *Thoma*, on the other hand, did not permit loose materials and slippery conditions to remain present even if the individual protected and guarded the area.  *See Thoma*, 632 A.2d at 731.

Plaintiffs' reliance on *Sibert-Dean* to argue that section 2000.5 is distinct from the common law standard of reasonable care is unavailing.  *Sibert-Dean*, 721 F.3d at 704.  In *Sibert-Dean*, the court ruled that a regulation requiring a bus driver to "give full time and attention to the operation of the vehicle" was distinct from the common law duty of reasonable care because "[i]t is one thing to ask whether a driver has given reasonable attention to the task at hand" and "[i]t is quite another to ask whether a driver has given *full* attention to his task."  *Id.*  Here, section 2000.5 requires an individual to "protect[]" and "guard[]" any public space that has a slippery condition, which, as discussed above, does not substantively differ from a property owner's common law duty to "exercise reasonable care under the circumstances to *protect*" a lawful visitor from a dangerous condition.  24 DCMR § 2000.5; *Odemns*, 930 A.2d at 142 n.8 (emphasis added).

Similarly, section PM-305G.4 does not "set forth specific guidelines to govern behavior" sufficient to form the basis of a negligence *per se* claim.  *McNeil,* 686 A.2d at 580–81.  By requiring a walking surface to be "maintained in sound condition and good repair" and "free from hazardous condition," the regulation is not substantively different from the common law duty of reasonable care.  12 DCMR § PM-305.4G; *McNeil,* 686 A.2d at 580–81.  Further, the regulation's second requirement—that the walking surface be "maintained free from hazardous condition"— imposes upon a property owner the same obligation as the regulation in *Thoma*, which provided

25

that "[s]lippery conditions on stairways shall be eliminated as soon as possible."  12 DCMR § PM-305.4G; *Thoma*, 632 A.2d at 727.  Accordingly, CVS is entitled to judgment as a matter of law on Count II of Plaintiffs' Complaint.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** CVS' Motion for Summary Judgment (ECF No. 47).  The Court will issue a separate Order.

Date: August 5, 2024

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE